No. 139.—EDWARD GROVES *v.* K. M. CLARK and R. H. CARNAL.

A third holder of a promissory note, given for the price of a slave cannot recover thereon, although he acquired the note in good faith, for a valid consideration, before maturity. Constitution of 1868, article 128. Wainwright *v.* Bridges, 19 An. 234.

APPEAL from the Ninth Judicial District Court, parish of Rapides. *Edward C. Leckie* (attorney at law), presiding, vice *Orsborn*, recused. *Edward Groves*—plaintiff in person, appellant, *Manning*, for defendants and appellees.

TALIAFERRO, J. The defendants are sued upon a promissory note for $2225, dated January 4, 1859, made payable two years after date to the order of John H. Ransdell, tutor to the minor heirs of Austin W. and Harriet X. Burgess, and stipulating the payment of interest at eight per cent. per annum from maturity. Partial payments seem to have been made upon the note, and the credits indorsed.

The defense is, that the sole consideration of the note was the purchase of slaves, which being emancipated and their services lost to the defendant, he is under no obligation to pay the note.

Judgment was rendered in favor of the defendants and the plaintiff appeals.

The facts of the case are that Kenneth M. Clark, the principal debtor, bought at a succession sale of Austin W. and Harriet X. Burgess on the fourth of January, 1859, five slaves at the price of $8900, of which he paid in cash $2225, and executed his three several promissory notes each for two thousand two hundred and twenty-five dollars, with Carnal the other defendant as his surety *in solido*, and executed a mortgage on the slaves purchased to secure the payment of the notes. The note sued upon is one of a series of three executed for the payment of the price of the slaves.

The plaintiff establishes that he acquired the note on which he founds this suit before its maturity. It seems that he took it in part payment for an interest of his brother, William P. Groves, in a drug store.

The article 128 of the State Constitution forbids the enforcement of obligations entered into for the payment of the price of slaves. But it is contended that this provision of the State Constitution does not apply in cases where obligations having that character and in the form of negotiable notes are transferred before their maturity to third parties. The plaintiff alleges that he is a *bona fide* holder before maturity, and that as between himself and the maker of the note the consideration cannot be inquired into.

We propose to examine cursorily the stress which is given in argument to the changed relations of parties arising from the transfer of a negotiable instrument by indorsement. Every indorsement is said to be equivalent to a new drawing. The contract between the payee and the indorsee is a new and different contract from that between the

maker and the payee. But does not this new and different contract inevitably connect and complicate itself even with the essential parts of the first contract? A sells slaves to B, and B executes his negotiable promissory note for the payment of the price, say at twelve months from the date of the transaction. Before its maturity, A transfers the note to C, to pay for a lot of mules he bought from him. What is the purpose of the parties to this new contract? B's obligation is transferred to C in order that A may get the mules, and C gives the mules to acquire that obligation, and the right to enforce it. The consideration then for which C parts with his mules is identical with that for which A parted with his slaves, namely, the price of the slaves which B had obligated himself to pay to A. It follows then that C *did* contract for an illegal obligation and for the right to enforce that illegal obligation, whether he knew it or not. He contracted for an obligation reprobated by law and forbidden to be enforced. But by the rules of the law merchant he would be protected as an innocent holder for value before maturity and without knowledge of equities or exceptions that might exist between the original parties. But is the commercial law paramount? Certainly not. It prevails, so far as not modified, limited or altered by statutory or constitutional provisions. This we hold is now the case in Louisiana as regards obligations of every kind and in every form which have been entered into for the payment of the price of slaves. Article 128 of the State Constitution is couched in clear and unambiguous language. Its terms are unequivocal: its expression imperative. " Contracts for the sale of persons are null and void, and shall not be enforced by the courts of this State."

In the face of this paramount authority so plainly enunciated, can the courts of this State enforce contracts which it reprobates, whether the holder of the obligation is in good or bad faith, or a holder before or after maturity? The positive prohibition of the article 128, makes no exception in favor of one class of holders over another. Shall the courts make such an exception? This sanctity by the mercantile law of the rights of a *bona fide* holder before maturity is not recognized by the Constitution of the State *quoad* the contracts it repudiates. Its meaning is that *all* contracts for the sale of persons are null and void. Can this mean that *some* contracts for the sale of persons are null and void, and other contracts of the same kind valid? Or, rather can it mean that contracts for the sale of persons shall be null in the hands of certain parties, but valid in the hands of other parties? If an obligation for the payment of the price of slaves in the hands of a third holder before maturity can be enforced, then there are some contracts for the sale of persons that are not null and void. Where is the logic of such a conclusion? None dispute that obligations of the sort in question are by the terms of the article 128 of the Constitution utterly and absolutely null and void in the hands of the original parties. If

thus stricken with nullity what is to revive and give them validity? We hold the purpose of article 128 of the Constitution of the State to be clear and without doubt, and that that purpose is, that the contracts which it reprobates shall be null in whose hands soever they are found, and that the courts are forbidden to enforce them whether held by owners *bona fide* or *male fide*, and without reference to the time they acquired them.

But if the meaning and intention of that article of the Constitution were not clear and explicit, and it were a matter of inference and deduction, how would the case rest? Suppose a legislator should announce by a formal statute that all contracts, the consideration of which were the commission of murder, should be null and void, and that the courts should not enforce them. What construction would rationally be given to the statute? Could it be limited to contracts of that character to apply as between the parties only? If so, the legislator would have done a very vain and a very useless thing, for by laws already existing no contract of that kind could be enforced between the original parties. The statute so construed would practically be nugatory. Then the interpreter would be required to give it some meaning and force, if it were susceptible of it, beyond the previously existing laws on the same subject matter. *Magis res valeat quam pereat.* He could not, according to established rules of construction, conclude that the legislator intended to do so jejune and meaningless a thing as that of merely enacting a law which was already enacted. This would be absurd. He must then, if the terms of the statute would admit of enlargement, give it that enlargement as the purpose of the legislator, and decree the nullity of the reprobated contracts against all parties and under all circumstances. Now under the hypothesis that the meaning of article 128 of the State Constitution is not free from doubt, let us apply this process of reasoning for the purpose of determining that meaning. By the decision in the case of Wainwright v. Bridges, 19 An. 234, followed by many decisions affirming it, it was fully settled that contracts for the payment of the price of slaves were null, and that the courts could not enforce them. These decisions were the settled law of the State before the adoption of the Constitution of 1868. There was then no call for the insertion of the article 128 in that Constitution if the framers of the organic law did not intend to assert more broadly the doctrine of the Wainwright case than was announced in that decision, and to leave no question as to their intention to render null and abortive in the hands of any holder whatever all obligations of the kind treated of in the one hundred and twenty-eighth article. We accept that article as being clear and explicit on the subject, and as necessarily overruling the case of the Canal Bank v. Templeton, 20 An. p. 141, decided before the adoption of the Constitution.

72

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed with costs in both courts.

---

LUDELING, C. J. The only obligation contracted by the maker of the note sued upon was to pay the amount thereof.

This is the obligation which we are called upon to enforce.

The record shows that this contract was for the sale of persons, and the Constitution of this State forbids the enforcement of such contracts by the courts.

For the reasons given in the case of Charles F. Dranguet, administrator *v.* E. Rost, 21 An., and the reasons stated in the opinion of Mr. Justice Taliaferro, I concur in his conclusions.

---

HOWELL, J. As the proof in this case shows that the contract into which the defendant entered, and the consideration of which is evidenced or represented by the note sued on, is one for the sale of persons, it cannot be enforced under the Constitution, which controls the rules of the law merchant, established in the interest and for the convenience of commerce.

For this reason and those assigned in the case of A. Armstrong *v.* T. Lecomte No. 1291, I concur in the decree.

---

WYLY, J. I think the obligation between the indorsee and the maker of the note sued on, cannot be enforced without enforcing the original contract.

If the maker is forced by the court to discharge his obligation to the indorsee he is necessarily forced to discharge the contract he has made with the payee, which was for slaves.

This we cannot do without violating article 128 of the Constitution.

For these reasons and those given by Mr. Justice Taliaferro, I concur in the decree of the court.

---

HOWE, J., *dissenting :*

The record in this case clearly shows that the note in suit was indorsed by its payee to one Burges, who in turn indorsed it in blank, and transferred it for value and before maturity to the plaintiff, who took it in good faith. The note itself bears upon its face no *indicia* of its origin. It is not even paraphed.

With such facts apparent and unquestioned, I find it impossible to

concur in the opinion which has been delivered on behalf of a majority of the court.

It is hardly necessary to say that I do not propose to take ground in favor of enforcing "contracts for the sale of persons."

The jurisprudence of the State in this regard is settled; and the prohibition of the Constitution is plain and must be respected and obeyed. But it is difficult to perceive how the giving of judgment in this case, in favor of the plaintiff, can be considered in law the enforcing of a "contract for the sale of persons."

It is true that the consideration or cause of the contract between the makers and payee was the sale of slaves, and upon the authority of Wainwright v. Bridges, 19 Ann. 234, and many succeeding cases, this court would decline to enforce the note as between the original parties, and would point to the one hundred and twenty-eighth article of the constitution as a recognition and confirmation of the principles enunciated in those decisions. But it by no means follows that the contract between the makers of the note in suit and the plaintiff is a contract for the sale of persons, or that the sale of persons had any legal connection whatever with it.

On the contrary, I apprehend that the contract between the makers of the note in suit and the plaintiff was that of the accepter of a bill drawn by Burges, the second indorser, upon the defendants in favor of the plaintiff, in payment for half a drug store. I believe all writers agree in this view, that the indorser of a note may be looked upon as a drawer of a new bill, the indorsee as the payee thereof and the original maker of the note as the accepter, and this is essentially a new contract. Hill v. Martin, 12 M. 183, and cases there cited; 7 L. 498; 11 R. 497; 9 M. 194.

If, therefore, to give judgment for the plaintiff in this case would be to enforce any contract of sale, it would be a contract for the sale of half a drug store, and not for the sale of persons.

Suppose A, desiring the death of his neighbor, makes his note to the order of B, a hired assassin, and B transfers the note to C, who indorses it in blank and before maturity pays it to D for a pew in church. The innocent indorsee for value brings suit against A. It is clear that contracts to procure and commit murder are "null and void and shall not be enforced by the courts of this State;" and this provision is as imperative as if it formed an article in our Constitution. Their nullity is absolute, being founded on considerations of public order and good morals. Their execution is perpetually resisted by the law. But would A be listened to if he should say that D must not recover lest an agreement to do murder should thus be enforced. I think not. For it would not be the contract to procure assassination, or the contract to do murder, that would in such case be enforced; but that other obligation, that the maker, as accepter of a bill drawn by C, in

favor of D, in payment for a pew in church, would pay D the amount of the bill.

It is true that the law may declare a note void in the hands of even the innocent indorsee, though the spirit of modern civilization is opposed to such enactments, and if the one hundred and twenty-eighth article of the Constitution declared that notes like the one in suit should be void in the hands of a party like the plaintiff I could not urge the views above expressed. But the Constitution does not so declare. It declares the nullity of contracts for the sale of persons, It embeds in fundamental law the doctrine of Wainwright v. Bridges, a suit between the original parties to a slave note. But I must confess my inability to see how, either directly or by implication, it forbids the enforcement of a bill drawn in favor of the plaintiff in this case, in consideration of the sale of half a drug store, and in the eye of the law accepted by defendants.

In the case of the Canal Bank v. Templeton, 20 Ann. 141, decided about one year after the case of Wainwright, the defendant was sued upon his promissory notes given for the price of slaves. The defense was set up, as in this case and the consideration proved. But the court in a unanimous opinion said:

"We are satisfied from the evidence in the record, which is not rebutted, that the plaintiff is the *bona fide* holder of the notes sued on, indorsed and transferred to it previous to their maturity for a good consideration, without notice, and that no want of consideration, even by the emancipation of slaves or otherwise, between the original parties, can be urged against the plaintiff."

And the judgment given against the defendant was affirmed.

This decision was rendered in February, 1868, prior to the adoption of the present Constitution; but shall it be said that the judges who rendered it thereby enforced a "contract for the sale of persons," and that they would have gone on enforcing such contracts if they had not been checked by article 128 of the new Constitution? I trust not. I must still believe that the constitutional provision does not apply to the case at bar.

The same considerations seem to furnish a reply to the statement that the plaintiff cannot recover because the note as a contract was smitten through with nullity or *destroyed* by the destruction of slavery. Admit this nullification or destruction, is the note any less valid than one which is null and void *ab initio?* The plaintiff is the holder of a note which, as a contract between the maker and payee is said to have been destroyed, by war, by proclamation, and by constitutional amendment. Another man is the holder of a note, which, as in the illustration I have used, was given as the price of blood, and was, between maker and payee, originally and always, a mere nothing. Yet the latter we are told shall recover and not the former. I am unable to

perceive a reason for this discrimination. Grant that the contract between the maker and payee of the note in suit was without consideration, or grant that its consideration was immoral and unjust; grant that this consideration and this contract have been swept away, still that other agreement by the makers to pay the bill drawn upon them by the indorser, Burges, in favor of the plaintiff, remains untouched. Its consideration, the sale of half a drug store, was lawful and it ought to be enforced.

If this theory of the case be deemed fanciful, it may be laid aside without injury to the plaintiff's rights. All will agree that as *bona fide* holder for value, and before maturity of a promissory note, he must recover unless the note has by law been declared to be void even in such hands as his. Have we any statutory or constitutional provision making such a declaration? I find none. It is not claimed that there is such a statute. Does article 128 of the Constitution make such declaration? By no means. It declares contracts for the sale of persons to be null and void. The note in suit is not a contract for the sale of persons, or for the sale of anything. It is only avoided by implication, as an evidence of a debt incurred by a purchase of persons. But this implication ought not to involve any party but the payee, who was a party to the sale. If the article declared that promissory notes given for the price of persons should be null and void even in the hands of third and innocent parties, the case would be different, but it makes no such provision.

But if the intent and effect of the article is to avoid the note in suit in the hands of plaintiff, the article itself is null and void, being in conflict with the Constitution of the United States which declares that no State shall pass a law impairing the obligation of contracts. I prefer to adopt a construction which will not bring the makers of our Constitution in direct conflict with the supreme law of the land.

For these reasons I am of opinion that the plaintiff should have judgment.