# Harper *versus* Young.

1. A promissory note, given in a gambling transaction, is void; although negotiable in form, and in the hands of an innocent holder for value.

2. The fact that a fraudulent device was superadded to induce the giving of the note does not destroy the gambling nature of the scheme.

March 23d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 2 of *Philadelphia county:* Of July Term, 1885, No. 124.

The action was *assumpsit* on a promissory note brought by the holder, Charles A. Harper, against the maker, William Young. A *narr* in *assumpsit* was filed, and the defendant pleaded the general issue. The note was as follows:

$1,500.      WAUKESHA, WIS., August 10th, 1883.

Seventy days after date, for value received, I promise to pay to H. S. Mills or bearer $1,500 fifteen hundred dollars without defalcation or interest.      WM. YOUNG.

[Endorsed]      H. S. MILLS.

The following are the facts as they appeared on the trial of the case:

The defendant was formerly a bank president at Reading, and while at Waukesha, Wisconsin, was approached by a man who gave his name as Eckert and represented himself to be the son of a former friend of the defendant's. Together they subsequently called at the office of Mills (the payee of the note). Mills had a device of some sort by which drawings were made by tickets. Eckert bought tickets and gave Mills

his checks' for $2,600, and then asked the defendant to give his note for $1,500 to enable Eckert to take up his checks, and thus save. himself (Eckhert) from the disgrace which would attend a public exposure of the matter. The defendant declined to do so and went out. Eckert followed him and begged him to agree to something, and offered to give his note to the defendant for $1,500 payable· in sixty days if the defendant would give Eckert his (the defendant's) note for the same amount payable in seventy days; and Eckert promised to pay his note when due. The defendant agreed to this and gave the note, and Mills took the note to Chicago, and on August 14th, 1883, sold it to the plaintiff for value without notice.

The whole affair was a scheme between Eckert and Mills to defraud the defendant. There was no money lost at gambling. The defendant did not play, and no money was lost by Eckert. The entire defence rested upon the fact of a combination between Mills and Eckert.

The reason the defendant gave his note, was, in his own words:

" Because I believed the man to be the son of Mr. Eckert of Reading, and because I got his note which matured ten days before mine. I did that and nothing else. The note was not for any money I lost. I took no part in the lottery business."

The plaintiff presented the following points:

. 1. The consideration of the present note being .Eckert's note for the same amount maturing ten days before the note in' suit,. the transaction was a mutual exchange of promissory notes, and the plaintiff is entitled to recover.

2. The fact that the note may have been fraudulent as between the original parties is no defence against the plaintiff, unless he took the note *mala fide*, and there is no evidence that he did so take it.

3. There is no evidence tending to show that the plaintiff was connected with or had any knowledge of the original fraud alleged to have been perpetrated upon the defendant by Eckert.

4. Under the evidence the plaintiff is entitled to recover, and your verdict should be for the plaintiff.

In the general charge the court instructed the jury as follows:

The fraudulent means by which the note was acquired are not, without more, a defence as against the plaintiff, who appears to be a holder for value and without notice. The case has, however,.another aspect. [There can be no recovery on a note given in the course of a gambling transaction for money lost at play. The plaintiff admits this as a general rule, but

[Harper v. Young.]

contends that the case does not fall within it, because the defendant did not play, and gave the note for money won from his companion, Eckert. Moreover, Eckert did not, as the plaintiff contends, really lose anything, and the whole was a fraudulent pretence to mislead the defendant.]

[I do not regard this as a tenable proposition. It seems to me that whether gambling is or is not used as a pretence or coupled with fraud, it is none the less gambling; and I therefore leave the case to you with instructions that if the note was given for a gambling consideration, your verdict should be for the defendant.]

I decline the plaintiff's first point. I affirm his second point, with the qualification that it will not apply if the transaction was a gambling transaction. I affirm the plaintiff's third point and decline his fourth point.

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ, assigning for error the answer of the court to his points, and those portions of the general charge included within brackets.

*Angelo T. Freedley*, for plaintiff in error.—There was no evidence to warrant the court in submitting to the jury the question whether the note was given for a gaming consideration. The proof was clear that it was not. It was simply a deception practiced upon the defendant which, although a perfect defence between the original parties, cannot affect the title of a *bona fide* holder for value without notice: Battles *v.* Loudenslager, 3 Norris, 448; Third Nat. Bank *v.* McCann, 11 Weekly Notes, 480; Morehead *v.* Gilmore, 27 P. F. S., 119.

"If an act in violation of either statute or common law be already committed, and a subsequent agreement entered into, which, though founded thereupon, constituted no part of the original inducement or consideration, such an agreement is valid:" Story on Contracts, § 227; Thomas *v.* Brady, 10 Barr, 164, 170; Armstrong *v.* Toler, 11 Wheaton, 258; Unger *v.* Boas, 1 Harris, 610; Fariera *v.* Gabell, 8 Norris, 90; Dickson *v.* Thomas, 1 Out., 278; Ruchizky *v.* DeHaven, Id., 202.

The whole case comes down to this: That the defendant was deceived by Eckert's false representations that he was another man, and acting upon this, gave Eckert his note. But this is no defence against the plaintiff: McSparran *v.* Neeley, 10 Norris, 25; Geier *v.* Shade, 42 Leg. Int., 362.

And the entire point assumes that Eckert had really lost, which is not true, for the whole affair was a mere pretence.

*William Henry Lex*, for defendant in error.—The plaintiff's counsel argued that it was merely an exchange of paper, and

· [Harper *v.* Young.]

that the gambling transaction formed no part of the consideration. The jury, however, weighed the matter, and from the testimony found that it was a gambling transaction, and gave a verdict in favor of the defendant. Such a transaction is also expressly prohibited by the Act of 1762, cited in 13 N., .133.

· Not only does the Act of 1794 support this view of the case, but also the case of Unger *v.* Boas, 1 Harris, 601. That .case decides that where notes are given for money won at play, or where the gamester makes use of the note to pay his own debt, or to receive money upon it, such a note is void in the hands of even an innocent holder for value.

The whole law upon this subject, the various Acts of Assembly, and the latest construction put upon those in force in this state are fully stated in the case of Comly *v.* Hillegass, 13 Norris, 136.

. The subject is further discussed and the law stated in Blackstone's Commentaries, vol. 2, p. 171, *et. seq.* As upholding our view of the law, see the case of Edgell *v.* McLaughlin, 6 Wh., 176; also Comly *v.* Hillegass, 13 Norris, 136. The law which governs this case is the law of Pennsylvania; and secondly, not only under the law of this state, but under the statutes of Wisconsin, and under the common law, a negotiable note given for a gaming consideration is void, even in the hands of an innocent holder for value.

The opinion of the court was delivered April 5th, 1886.

PER CURIAM. The undoubted evidence proves the note in contention was given in a gambling transaction. The fact that a fraudulent device was superadded to induce the giving of the note, did not destroy the gambling nature of the scheme. The note was made payable to the order of the person who won the money in gambling, and in payment of the debt thereby incurred. It matters not that he was not as active in procuring the execution of the note as his accomplice. That there was concerted action between them is very evident. The foundation of the transaction and also the consideration .of the note, both rested on the one gambling operation. Such being the case, and although the note is negotiable in form, it is void even in the hands of a good faith and innocent holder for value.

Judgment affirmed.