The International Bank of Chicago et al.

v.

Henry C. Vankirk et al.

*Gambling Transaction—Paper Tainted Thereby Void—Renewal and Transfer Immaterial.*

Under the laws of this State all manner of gambling obligations are void in the hands of everybody, and such obligations can never be made valid by any renewals or transfers to innocent purchasers. Therefore a trust deed, given to secure a note given in payment of a gambling debt, though once renewed, and transferred to the hands of an innocent purchaser, is void.

[Opinion filed December 8, 1890.]

Appeal from the Circuit Court of Kankakee County; the Hon. N. J. Pilsbury, Judge, presiding.

Messrs. D. H. Paddock and Bottum & Swartz, for appellants.

The court below held that the said trust deed is tainted with illegality, and therefore void. In this we think the court erred.

The illegality of a thing or transaction consists in that it is either *malum in se* or *malum prohibitum*, and any illegality which may attach to dealing in "options" or "future deliveries" of a commodity in the marts of trade does not arise from the fact of such transactions being *mala in se* and contrary to the common law of the land, but that, for reasons of public policy, the sovereignty of the State has seen fit to forbid them and make them *mala prohibita*. These considerations are presented for the purpose of urging a strict construction of any prohibitory statutes which may apply to dealings of this character, and that they be not enlarged to cover facts not clearly within them.

The question as presented by the record in this case has

never been before the courts of appellate jurisdiction in this State before, and little assistance can be had from *stare decisis*.

The position taken by appellants is that whatever may have been the status of the original notes on account of illegal consideration, that such illegality was purged and did not attach to the second transaction when the later notes and trust deed were made by the defendant at the instance of the International Bank, an innocent holder for value.

Here was a new contract entered into by Vankirk with the bank, in which Vankirk executed new notes, and also a trust deed to secure them, in which he promises to pay the amount of said notes, in consideration of the old notes being canceled and delivered up, and in consideration of the sum the bank had paid for the notes. True, the second notes were made payable to A. C. Helmholz, but so they might have been made payable, if the parties saw fit, to any third person. The transaction was entirely and exclusively between the International Bank and Vankirk, and a good and valuable consideration moved between them. Vankirk wanted those old notes and that old matter settled; the bank wanted security for a sum of money which was rightfully due it, and each got what it wanted. There was no illegality in that transaction. Of course, if we go back of this to the first notes, illegality may be found, but the law considers proximate and not remote causes. Chitty on Contracts, 730, says: "The test as to whether a demand connected with an illegal transaction be capable of being enforced at law, is whether the plaintiff must rely on such transaction in order to establish his case."

The case of Calvert v. Williams, a North Carolina case, is, we think, an authority in point, although in that case the second note was made payable to the assignee of the first note. There the court says: "In our case the maker executed the second note to Calvert, who was the indorsee, for valuable consideration and without notice. This second note was given to secure the price paid by Calvert for the first note, and not to secure the payment of the money which Christmas had won; for the purpose of making it, must be

referred to the proximate and not the remote cause. The consideration, therefore, is not tainted by the illegality which vitiated the first note. His honor erred in failing to note the distinction." Calvert v. Williams, 64 N. C. 168.

A strict construction of the statute upon which appellees rest their defense will lead, we think, to the conclusion that the statute is not sufficiently broad to include within it the facts of this case. That our Supreme Court is disposed to construe this statute strictly is shown, we think, by the case of West v. Carter, 129 Ill. 249, which was a case in which the bondsman on an appeal bond filed his bill in chancery and sought to have the bond canceled and the original judgment declared void on the ground of illegality, and that the defendant, the appellant in the case above, be enjoined from taking judgment on the bond; but the court held that appellee, the complainant below, had no such interest in the judgment as entitled him to the relief asked under Sec. 131 Crim. Code, R. S.

Furthermore, this trust deed was made with the full understanding and consent of the defendant with the complainants for the very purposes which are now sought to be enforced, and on the principle laid down in the case of McIntire v. Yates, 103 Ill 497, he is estopped from setting up any equities existing between himself and Helmholz.

Messrs. JAMES N. ORR, B. F. GRAY and H. K. WHEELER, for appellees.

The statute expressly provides that all notes or other evidence of indebtedness, contracts, agreements, mortgages or other securities given, granted or entered into, " where the whole or any part of the consideration thereof " shall be for money, property or other valuable thing, won at gambling, or which grows out of a gambling contract, are void. Secs. 178, 179 and 180, Chap. 38, Revised Statutes.

It is provided, further, that all judgments, mortgages, assurances, bonds, notes, bills, specialties, promises, covenants, agreements and other conveyances, etc., may be set aside and

vacated by a bill of equity filed for that purpose by the person so granting or giving the same, or by any creditor, heir, devisee, purchaser or other person. Section 183, Chap. 38, Revised Statutes.

These complainants are seeking to enforce a mortgage, and the rule is so well settled that the assignee of a mortgage takes it subject to all equities between the parties to it as to need no citation of authorities. The courts of this State have held that the innocent holder of a note or draft, the consideration of which was money growing out of a gambling transaction, can not recover on the same. Pearce v. Foote, 113 Ill. 228; Chapin et al. v. Dake, 57 Ill. 296; Gilbert v. Holmes, 64 Ill. 548.

The statutes of this State have declared that all notes and mortgages, or other evidences of indebtedness, growing out of these transactions, are not merely voidable but are void and of no effect, and it is difficult to see upon what principle the renewal of a void note, one which had no standing of any kind in law, could make it a valid, legal obligation.

The statute also provides that "No assignment of any bill, note, bond, covenant, agreement, judgment, mortgage, or other security, on conveyance as aforesaid, shall in any manner affect the defense of the person giving, granting, drawing, entering note or executing the same, or the remedies of any person interested therein." Sec. 184, Chap. 38, R. S.

It is next urged that this was a "new contract," entered into by Vankirk with the bank, in which Vankirk executed new notes and also a trust deed to secure them, in which he promised to execute new notes in consideration of the old notes being delivered up; and it is insisted in argument that there was no illegality in the transaction. As before stated, we challenge this statement of the case. The bank was not a party to this contract. The maker of the notes was Henry C. Vankirk; the payee of the notes was A. C. Helmholz; and this contract was therefore between the maker of the note and the payee. The bank was not even privy to the contract. It was not known in the transaction. But assuming that the bank was a party to this contract, it being con-

ceded that the consideration for the original notes grew out of a gambling transaction, and that these notes were void, being contrary to law, we insist that the first contract being void, the renewal of it did not change its legal status; that such is the elementary rule of law. " Where the consideration is altogether illegal it is sufficient to sustain a promise and the agreement is wholly void. This is so equally whether the law which is violated be statute law or common law." Parsons on Contracts, Vol. 1, page 458, fifth edition.

"Illegality of a consideration avoids a mortgage whether it consists of violation of a common law or of a statute." Jones on Mortgages, Sec. 617.

"As a general rule, where the undertaking upon which the plaintiff relied was either upon an unlawful consideration or to do an unlawful act, the contract is void; and this whether the contract be illegal as being against the rules of the common law or the express provisions or general policy of any particular statute." Munsell v. Temple, 3 Gilman, 93; Wheeler v. Russell, 17 Mass. 237.

We therefore submit that as to the question of making the contract, it being on its face between Helmholz and Vankirk, that this court will presume that they were the actual parties to it.

Second. That the evidence of Vankirk is that they were the actual parties to the contract, and he is corroborated by the document itself.

The evidence of Schmid is that the contract was taken in the name of Helmholz for the purpose of securing his liability as an indorser, when the bank already had his liability as an original debtor, and it must be evident that this was a mere pretext and is not supported by any circumstances connected with the case.

As to the indorsement being void in the hands of an innocent holder, see Commercial National Bank v. Spaids, 8 Ill. App. 493.

Tenny v. Foote, 4 Ill. App. 594, was a board of trade case, and is, we think, directly in point in this case. The Appellate Court, page 601, says: "It is immaterial whether

plaintiffs be *bona fide* holders of the note or not, if the contract between Hooker & Co. and Foote was a gambling transaction and within the statute against gambling, because the statute itself renders void all contracts, notes, bills or other securities, whether the whole or any part of the consideration arises out of a gambling transaction."

Section 136, Criminal Code, declares "That no assignment shall in any manner affect the defense of the person making such note or bill." Chapin v. Dake, 57 Ill. 296, before cited. Such a thing as making valid by giving the new notes and trust deed would be an avoidance of the statute, and we consider it wholly untenable.

Finally. Even though the court should believe that the contract of renewal of the notes was between Vankirk and the International Bank, the original contract being void, that it is an insufficient consideration upon which to base a new contract, and that the bank gets no greater right under the peculiar provisions of our statute than did Helmholz.

C. B. SMITH, P. J. This was a bill in chancery brought by appellant against appellees to foreclose a certain trust deed, given by Henry C. Vankirk to Godfrey Schmid as trustee, to secure two notes, dated October 30, 1884, each for the sum of $1,342, due respectively in nine and eighteen months after date, with six per cent interest. The notes were payable to the order of A. C. Helmholz and by him indorsed to the International Bank of Chicago. These notes were renewals of two notes, dated May 1, 1884, one for $1,300, and one for the sum of $1,306.25, both of which were also payable to A. C. Helmholz and executed by Henry C. Vankirk. These first notes were assigned before maturity to Michael Schweisthal for a valuable consideration and as collateral security to the bank. Not being paid at maturity the notes first given were renewed and were executed to the same payees as the first notes, and signed by the same maker, Henry C. Vankirk, and before the maturity of these renewed notes they were assigned by Helmholz to the bank as collateral security and for a valuable consideration and without any actual notice to

the bank of any defense to the notes. The mortgage now sought to be foreclosed was executed to secure these two renewed notes of $1,342 each.

The original and amended bills were answered. The answer set out that the original consideration for which the two first notes were given, was for certain losses sustained by Vankirk on certain option deals in grain in Chicago, growing out of gambling contracts in grain, on the Board of Trade, and that the option deals and gambling contracts were had and carried on with A. C. Helmholz, and that the sum of these two notes represented the amount of loss sustained by Vankirk in his dealings with said Helmholz, and that the original notes and their renewals and the trust deed given to secure them were all to secure the payment of the original amount lost by Vankirk in his option deals and gambling contracts with Helmholz. In addition to the answer Vankirk also filed a cross-bill, giving a history of the transaction as set up in the original and amended bills, and the answers thereto, and charging that the consideration of said notes and the trust deed was fraudulent and void, and the consideration as stated in the answer, and alleged that the trust deed was a cloud on his title, and asked to have it canceled. Issues were joined and the cause heard by the court, and decree finding the facts to be as set up in the answer and cross-bill; and a decree that the original and amended bills be dismissed, and that the relief asked for in the cross-bill be granted, and the trust deed and notes canceled. From that decree this appeal is prosecuted.

The proof below established the fact that these notes represented the losses of Vankirk, growing out of his gambling transactions on the Board of Trade with A. C. Helmholz. Indeed, we do not understand appellant as seriously denying that the original consideration of these notes was illegal, fraudulent and void, as being the product of gambling in grain on the Board of Trade. The contention of appellant is that conceding the notes to have been tainted originally with an illegal consideration, still the renewal of the same to the same payee, and by him immediately indorsed to the bank for a valuable consideration, and without notice of the illegal con-

sideration, would enable the bank to hold them as an inno-cent purchaser free from the taint of the original consideration. We do not concur with appellant in this view of the law. We think the renewal of these notes gave them no new merit, nor in any manner whatever removed or changed the illegal consideration of the first notes. The consideration for the new notes was the same as in the old ones. Giving the trust deed to secure them did not change the illegal character of the consideration. It is a familiar rule of law that an assignee of a mortgage or trust deed takes it subject to all the equities of the mortgagor, and the assignee of the mortgagee can not occupy any better position toward the mortgaged property than the mortgagee himself. It is also well settled that there can be no innocent holders of promissory notes or mortgages, where it appears that the consideration of such notes and mortgages was the result or grew out of a gambling transac-tion. All such contracts are void in the hands of all persons; Pearce v. Foote, 113 Ill. 228; Chapin v. Dake, 57 Ill. 296. The Bank v. Spaids, 8 Ill. App. 493.

Sections 178, 179 and 180, Chap. 38, Rev. Stat. (Starr & Curtis), declare all manner of gambling contracts, includ-ing those in grain, to be absolutely null and void. Sec. 183, Chap. 38, provides that any and all such contracts, even if reduced to judgments, may be set aside and vacated in a court of equity; and section 184 of the same act provides that no assignment of any such note, mortgage, judgment or other form of contract, shall defeat or affect the defense of any person so having executed or delivered any of said gam-bling contracts. It will thus be seen that under the broad and sweeping language of our statute, all manner of gambling obligations are absolutely void in the hands of everybody, and that such obligations can never be made valid and legal by any possible changes to which they may be subjected. The original taint of illegality follows them into the hands of all holders, and adheres to them and poisons them in what-ever form they may take. The judgment of outlawry is against them in all hands and in all forms. It being clearly proven in this case, and not denied, that the original consid-

eration of these notes was the product of gambling in grain and representing losses in option deals, it therefore becomes a matter of no importance how or when this bank became possessed of these notes and this trust deed, nor what they paid for them.   We therefore think the decree of the Circuit Court was right, and the decree will be affirmed.

*Decree affirmed.*