### Irwin v. Marquett.

[No. 3,325. Filed Jan. 4, 1901. Rehearing denied March 12, 1901.]

Bills and Notes.—*Check Given for Money Won at Gaming.*—A
check given for money won at gaming is void in the hands of a
*bona fide* holder, for value, under §6675 Burns 1894.

From the Bartholomew Circuit Court. *Affirmed.*

*S. Stansifer* and *C. S. Baker,* for appellant.

Robinson, J.—Appellant as indorsee sued appellee upon
a check drawn by appellee and payable to W. S. Bedgood,
and indorsed by Bedgood to appellant.

Appellee answered that before making the check Bedgood
and appellee played at cards; that Bedgood won of appellee
$400, for which the check was given; that the check was
given for no other consideration whatever. Overruling a
demurrer to this answer is the only question presented.

It is well settled by the authorities that, no matter how illegal or immoral the consideration of a note or bill, it is valid in the hands of a *bona fide* holder for value, unless some statute makes the instrument absolutely void. *Sondheim* v. *Gilbert,* 117 Ind. 71, 10 Am. St. 23, 5 L. R. A. 432; *Third Nat. Bank* v. *Harrison,* 10 Fed. 243; *Town of Eagle* v. *Kohn,* 84 Ill. 292; *Cazet* v. *Field,* 9 Gray 329; 1 Parson's Notes & B., 218; Daniel on Neg. Inst. (4th ed.), §197; Story on Promissory Notes (6th ed.), §192; *Schmueckle* v. *Waters,* 125 Ind. 265.

In Story's Bills of Exchange (4th ed.) §188, the author says: "A *bona fide* holder for value, without notice, is entitled to recover upon any negotiable instrument which he has received before it has become due, notwithstanding any defect or infirmity in the title of the person from whom he derived it; as, for example, even though such person may have acquired it by fraud, or even by theft or robbery."

The above rule goes only to the consideration, and such *bona fide* holder is not protected against the defense of the maker's incapacity to make the paper, but he takes it with constructive notice of all legal disabilities of the parties, such as infancy, coverture, or unsoundness of mind. *McClain* v. *Davis,* 77 Ind. 419; *Voris* v. *Harshbarger,* 11 Ind. App. 555.

Section 6675 Burns 1894, §4950 Horner 1897, provides: "All notes, bills, bonds, conveyances, contracts, mortgages or other securities made hereafter, when the whole or any part of the consideration thereof shall be for money or other valuable thing won on the result of any wager, or for repaying any money lent at the time of such wager for the purpose of being wagered, shall be void."

The question in this case is, therefore, whether commercial paper in the hands of a *bona fide* holder, for value, is subject, because of the statute above set out, to the defense that it was given upon a gaming consideration.

It is the law that in a suit by a *bona fide* holder against

an indorser the latter can not defend on the ground that the original contract was based on a gaming consideration, for the reason that the indorsement is a separate and independent contract and the indorser by his indorsement warrants the validity of the original contract.    Daniel's Neg. Insts., §671 *et seq.;* Chitty on Bills (11 Eng. ed.) 179-181; *Johnston* v. *Dickson,* 1 Blackf. 256; 1 Parsons on Notes & Bills 217, 218; *Edwards* v. *Dick,* 6 Eng. Com. Law 455; Edwards on Bills, 289, 350; Story on Prom. Notes (16th ed.), §193; Story on Bills, §§111, 112, 225; Tiedeman on Com. Paper, §259; *Fish* v. *Bank,* 42 Mich. 203.

The law merchant grew out of the necessity and convenience of business, and, although different from the general rules of the common law, it was engrafted into it and became a part of it.    1 Chitty's Bl. Com. 75.    As administered in England it became a part of the law of this State upon the adoption of the Constitution.    It has always been in force in this State, and is still in force unchanged in any way, except that notes to be negotiable as inland bills of exchange must be payable to order, or bearer, in a bank in this State, and the further exception in a matter of practice allowing an equitable assignee to maintain an action at law in his own name.    §§7515-7520 Burns 1894.    So that the holder of commercial paper by indorsement, before due, for value, and without notice, is protected by the law merchant against the maker's defense of gaming consideration, unless the law merchant has in that particular been superseded by §6675 above set out.

The statute, 16 Car. 2 c. 7, was an act against deceitful, disorderly and excessive gaming, and provided that such contracts, etc., "shall be utterly void and of none effect". Under this statute the case of *Hussey* v. *Jacob,* 1 Salk. 344 was decided, in which Holt, C. J., said: "If A wins £100 of B and for a debt which A owes C he appoints B to give C a bond, it is good; C is an innocent person, and it will be the same thing if A be bound with him".

The statute 9 Anne, c. 14, was for the better preventing excessive and deceitful gaming, and provided that notes etc., given for a gaming consideration should be "utterly void, frustrate, and of none effect, to all intents and purposes whatsoever, any statute, law, or usage to the contrary thereof in anywise notwithstanding." Under this statute the case of *Bowyer* v. *Brampton,* 2 Strange 1155 was decided in which it was held that an indorsee for value and without notice could not recover against the makers of promissory notes given for money advanced to game with at dice. In the opinion it is said: "As to what Holt said in *Hussey* v. *Jacob,* it was not the point adjudged * * *."

In *Edwards* v. *Dick,* 4 Barn. & Ald. 212, 6 Eng. Com. Law 455, the action was by an indorsee of a bill of exchange against the defendant as *drawer* and *indorser.* A recovery was had on the ground that the case did not come within the purview of the statute 9 Anne. In answer to the argument that if a recovery was had the bill would be valid to some purposes, Abbott, C. J., said: "But, I think we must understand the language of the legislature with reference to the object which they then had in view, viz., the prevention of gaming; and that will be effectually accomplished, by holding the securities to be void for any purpose of enforcing payment of the money won at play. The drawer, therefore, of such a bill of exchange can not maintain any action against the acceptor. Now if he could, by passing the bill to a third person, enable him to sue the acceptor, that would be within the mischief of the act. It follows, therefore, that no person deriving title through the drawer, can be in a different situation from him so as to sue the acceptor. The case of *Bowyer* v. *Brampton* falls within this rule; for there the action was brought against the loser, to recover money lost at play, and the court properly held that the action would not lie. * * * Upon the whole, I am of opinion, that we shall best effectuate the intention of the legislature, by saying that this bill is void for every pur-

pose which it was the object of the statute 9 Anne, c. 14, s. 1, to prevent.  No person, therefore, who derives his title through the winner, can make the loser pay.  But for the purpose of preventing fraud, we can not permit the defendant to set up his own gaming as a defense; and therefore I think that the words of the statute do not extend to the present case, and that this rule ought to be refused."

The provisions of the statute 9 Anne, have been declared to be in force in many of the states, and the case of *Bowyer* v. *Brampton* has often been cited.  The provisions of that statute were afterwards modified by statute and such securities were deemed to have been made for an *illegal* consideration.  *Hay* v. *Ayling,* 16 Ad. & El. 423, 71 Eng. Com. Law 423.

The language of the present statute, enacted in 1852, is that such instruments "shall be void".  R. S. 1852, p. 305. In 1824 the language was "shall be utterly void and of no effect, to all intents and purposes whatsoever". · R. S. 1824, p. 223.  The same language remained through the revisions of 1831, 1838, and 1843. R. S. 1831, p. 282, R. S. 1838, p. 324, R. S. 1843, p. 593.  An act approved January 29, 1818, used the words "shall be utterly void, frustrate and of no effect to all intents and purposes whatsoever".  Acts 1817-18, p. 88, §40.  An act approved December 30, 1816, said, "shall be utterly void, frustrated and of no effect to all intents and purposes whatsoever, any law, usage or custom to the contrary notwithstanding."  Acts 1816-17, p. 92, §1.  Whether in these enactments the legislature intended to restrict the meaning of the statute, or was prompted by a commendable desire to be brief and to the point, we do not think it necessary to inquire for the purposes of this case. We must give the words used their ordinary meaning. There is nothing in the act which shows the legislature intended they should have any other meaning.  If it was intended  to except commercial paper under certain circumstances from the provisions of the act, the legislature should have made the exception.

It is insisted by counsel that the word "void" used in the statute should be construed to mean "voidable" only, and that that is the usual and ordinary sense in which the word is used. Much confusion has grown out of the ill-advised and inaccurate use of the words void and voidable. Where the purpose of a statute is to protect a person presumably unable to protect himself the word void may with good reason be construed under certain circumstances to mean voidable only. But we know of no reason for applying this rule to a statute whose purpose is to subserve a public policy. The second and fourth sections of the act in question provide for recovering back the money or property lost. But we agree with counsel for appellant that the purpose of the statute in question "is not the *protection* of the *loser.*" Having been a wrongdoer it is not the policy of the law to protect him. The purpose of the statute is the suppression of gaming and it was manifestly intended to be in aid of the statute punishing gaming. The species of gaming now being considered is by statute made a misdemeanor. While the act does affect the parties to the instrument, yet its chief object is to affect the instrument itself. The instrument is declared void by the statute, not only because it has no legal consideration to support it, but also because it is against public policy to make such a contract. It was a complete nullity from the moment it was made. It never had any value. . If it is protected in the hands of anyone it is thus recognized as a thing of value. The winner could not recover upon the check against the loser. To permit him to accept from the loser commercial paper, and by indorsement give the holder a right to sue the loser, would make the statute of no avail to prevent gaming.

In this State the word "void" used in certain statutes has been construed to mean voidable only. "Every contract, sale or conveyance of any person while of unsound mind shall be void." §2724 Burns 1894. The word "void" in that statute has been construed "voidable" in reference to

the contract of a person *whose unsoundness of mind has not been judicially ascertained. Crouse* v. *Holman,* 19 Ind. 30; *Hardenbrook* v. *Sherwood,* 72 Ind. 403. But where the fact of unsoundness has been judicially ascertained, the word void is not so construed. *Redden* v. *Baker,* 86 Ind. 191; *Musselman* v. *Cravens,* 47 Ind. 1. Strictly speaking "void" has not been rendered "voidable", but the words "whose unsoundness of mind has been judicially determined" have been read into this statute. Until the unsoundness has been judicially determined, the contract is voidable, but after such determination the contract is an absolute nullity.

"A married woman shall not enter into any contract of suretyship, whether as indorser, guarantor, or in any other manner; and such contract, as to her, shall be void". §6964 Burns 1894. It will be noticed "that such contract *as to her* shall be void." Accordingly it has always been held that her coverture is a *personal defense,* and that such a contract can only be avoided by her and her privies in blood or representation. *Lackey* v. *Boruff,* 152 Ind. 371, and cases there cited; *Bennett* v. *Mattingly,* 110 Ind. 197, 202.

It is manifest that the only purpose of the above statute is to protect persons presumably unable to protect themselves; that is, to protect the party who made the contract. They were not enacted to subserve any public policy.

As is said in Maxwell, Int. of Stats. (2nd ed.) 256: "In general, however, it would seem that where the enactment has relation only to the benefit of particular persons, the word 'void' would be understood as 'voidable' only, at the election of the persons for whose protection the enactment was made, and who are capable of protecting themselves; but that when it relates to persons not capable of protecting themselves, or when it has some object of public policy in view which requires the strict construction, the word receives its natural full force and effect." *Rex* v. *Hipswell,* 15 Eng. Com. Law 232, 8 Barn. & Cress. 466; *Pearse* v.

*Morrice,* 29 Eng. Com. Law 59, 2 Ad. & El. 84; *Boynton* v. *Hubbard,* 7 Mass. 112; *Van Shaack* v. *Robbins,* 36 Iowa 201, 205; *Smith* v. *Saxton,* 6 Pick. 483.

Counsel cite the following cases where the word "void" in a statute has been construed to mean "voidable" only: *Green* v. *Kemp,* 13 Mass. 515; *Ewell* v. *Daggs,* 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682; *Hussey* v. *Jacob,* 1 Salk. 344; *Kerrison* v. *Cole,* 8 East 231; *St. Nicholas Case,* 2 Strange 1066; *Magdalen Hosp.* v. *Knotts,* L. R., 4 App. Cas. 324.

In *Green* v. *Kemp, supra,* a purchaser of the mere equity of redemption could not avoid a mortgage by plea or proof of usury, although a statute declared all mortgages on a usurious consideration void.

In *Ewell* v. *Daggs, supra,* a Texas statute declared a contract of loan at a greater rate than twelve per cent. per annum "to be void and of no effect for the whole premium or rate of interest only." This provision of the usury law was repealed by a constitutional provision, and while the opinion does say that the word "void" might be rendered "voidable" only, yet the decision in that case seems to rest upon the principle that as the repeal operated retrospectively it thus cut off the defense of usury.

*Hussey* v. *Jacob,* 1 Salk. 344, was decided under the statute 16 Car. 2, which used the words "shall be utterly void and of none effect." Afterwards, *Bowyer* v. *Brampton,* 2 Strange 1155, was decided under the statute 9 Anne c. 14, in which it was said: "As to what Holt said in *Hussey* v. *Jacob,* it was not the point adjudged."

In *Kerrison* v. *Cole,* 8 East. 231, a statute provided that a transfer of property in a ship should recite the certificate of registry therein, otherwise such bill of sale "should be utterly null and void to all intents and purposes." It was held that though such a bill, given as a mortgage, might be void for failure to comply with the statute, yet the party giving it might be sued upon his personal covenant con-

tained in the same instrument for the repayment of the money lent.

In *St. Nicholas Case,* 2 Strange 1066, the statute, 5 Eliz. c. 4, declared "That all indentures, covenants, promises and bargains of or for the having, taking or keeping of any apprentice, otherwise hereafter to be made or taken, than is by this statute limited, ordained and appointed, shall be clearly void in the law, to all intents and purposes." The statute provided the lending should be for seven years. In holding an apprentice bound for four years only gained a settlement, it was said: "Here the indenture has had its effect, and neither *master* nor *servant* has taken advantage of the objection." In the case of *Currenden and Laland,* reported in the same volume, page 903, the statute 8 Anne c. 9 required a duty to be paid on indentures and if not paid the indenture to be void. The apprentice served three years, but the master had never paid the duty of sixpence. It was held a settlement because the master had six months to pay the duty in, and during these six months a settlement was gained, and that it should not be in the power of the master to defeat it by matter *ex post facto.* But the order was quashed because the statute made such an indenture void to all intents and purposes whatever.

In *Magdalen Hosp.* v. *Knotts,* L. R., 4 App. Cas. 324, statute 13 Eliz. c. 10, provided that certain deeds of certain kinds of property by spiritual persons "shall be utterly void and of none effect, to all intents, constructions and purposes; any law, custom or usage to the contrary any ways notwithstanding." The governors of Magdalen hospital made a lease in 1783 of certain hospital lands for ninety-nine years at the rent of one peppercorn, if lawfully demanded. In 1876 the governors brought an action to recover possession of the leased land. The court of appeal held the lease voidable, but that the right to enter and avoid it accrued to the hospital immediately after the lease was made, and was therefore barred at the end of twenty

years. Upon appeal the lease was held *absolutely void,* but the case was affirmed on the ground that the action was barred.

Keeping in view the policy of the statute, that its object is to suppress the evils arising from gaming, we think the words used should be given their ordinary legal signification, and, while hardships may arise in individual cases in the enforcement of such a statute, yet we believe they are second in importance to the public policy to be subserved by such a statute. Besides, as is said by Lord Mansfield in *Lowe* v. *Waller,* 2 Doug. 736, "It is less mischievous that the law should be as it is with respect to bills and notes, than other securities; because they are generally payable in a short time, so that the indorsee has an early opportunity of recurring to the indorser, if he can not recover upon the bill."

To give the statute the construction contended for by counsel, we must in effect read into the statute an exception from its provisions. This we think is a matter for the legislature, and not the courts. In some states the statute excepts from its operation *bona fide* holders for value and without notice. Comp. Laws, Mich. 1897, §5933; R. S. Maine, 1883, c. 125, §10.

The statute in question makes the contract sued on void because of its illegal consideration, and it seems to be the settled doctrine of the courts and text-writers that commercial paper founded on such a consideration, and which a statute in direct terms declares shall be void, is void, even in the hands of a *bona fide* holder. Daniel on Neg. Inst. (4th ed.) §197, 807; Tiedeman Com. Paper §178; 2 Randolph on Com. Paper, §517; Chitty on Bills (12 Am. ed.) 108; 3 Kent Com. (13th ed.) 80; Edwards on Bills of Ex. 337; Norton on Bills & Notes (3rd ed.) 234; 1 Parsons Notes & Bills 218; *Vallett* v. *Parker,* 6 Wend. 615; *Woodson* v. *Barrett,* 2 H. & M. (Va.) 80, 3 Am. Dec. 612; *Traders Bank* v. *Alsop,* 64 Iowa 97, 19 N. W. 863; *Lagonda*

*Nat. Bank* v. *Portner,* 46 Ohio St. 381, 21 N. E. 634; *Snoddy* v. *Bank,* 88 Tenn. 573, 13 S. W. 127, 7 L. R. A. 705; *Mordecai* v. *Dawkins,* 9 Rich. L. (S. C.) 262; *Conklin* v. *Roberts,* 36 Conn. 461; *Kuhl* v. *Press Co.,* 123 Ala. 452, 26 South. 535; *Cunningham* v. *National Bank,* 71 Ga. 400, 51 Am. Rep. 266; *Bank* v.*Vankirk,* 39 Ill. App. 23; *Morton* v. *Fletcher,* 2 A. K. Marsh. (Ky.) 137, 12 Am. Dec. 366; *Emmerson* v. *Townsend,* 73 Md. 224, 20 Atl. 984; *Root* v. *Merriam* (C. C.), 27 Fed. 909; *Harper* v. *Young,* 112 Pa. St. 419, 3 Atl. 670; *Chapin* v. *Dake,* 57 Ill. 295; *Taylor* v. *Beck,* 24 Va. 316; *Evans* v. *Cook,* 11 Nev. 69; *Bowyer* v. *Brampton,* 2 Strange 1155; *Hitchcock* v. *Way,* 6 Ad. & El. 943, 33 Eng. Com. Law, 490; *Shillito* v. *Theed,* 7 Bing. 406, 20 Eng. Com. Law 184; *Summerfeldt* v. *Worts,* 12 Ontario 48; *Henderson* v. *Brunson,* 8 Price 281; *Town of Eagle* v. *Kohn,* 84 Ill. 292; *Wyatt* v. *Wallace* (Ark.), 55 S. W. 1105; *Glenn* v. *Farmers Bank,* 70 N. C. 191. See, also, *City of Aurora* v. *West,* 22 Ind. 88, 85 Am. Dec. 413; *Vories* v. *Nussbaum,* 131 Ind. 267, 269, 16 L. R. A. 45; *Spray* v. *Burk,* 123 Ind. 565, 568; *Sondheim* v. *Gilbert,* 117 Ind. 71, 77, 5 L. R. A. 432, 10 Am. St. 23.

The same is · true under statutes against usury. In *Bacon* v. *Lee,* 4 Iowa 490, it is said: "Where a statute against usury provides that the usurious contract is void, then no subsequent circumstances can make the original contract good; and a promissory negotiable note, void at its inception for usury, is equally void in the hands of an innocent indorsee." See *Bridge* v. *Hubbard,* 15 Mass. 96, 8 Am. Dec. 86; *Kendall* v. *Robertson,* 12 Cush. 156; *Wilkie* v. *Roosevelt,* 3 Johns. Cas. 206; *Chapman* v. *Black,* 2 Barn. & Ald. 588; *Lowes* v. *Mazzaredo,* 1 Starkie 310; *Lowe* v. *Waller,* 2 Doug. 736.

In *Bailey* v. *Taber,* 5 Mass. 286, a statute required notes to be wholly in writing, and that notes bearing the impression of types, plates, or printing should be void, and no

action maintained thereon; held, such notes were void in the hands of a *bona fide* holder for value.

Under an Ohio statute providing that "All promises, agreements, notes, bills, bonds, or other contracts, *  *  * when the whole, or any part of the consideration of such promise, *  *  *  is for money, *  *  * won or lost, *  *  * upon any game, *  *  * whatever, *  *  * shall be absolutely void, and of no effect," it was held the indorsee of a check given for money. lost at a game at cards can not recover against the drawer though a *bona fide* holder for value without notice of the vice in the consideration. *Lagonda Nat. Bank* v. *Portner,* 46 Ohio St. 381, 21 N. E. 634.

In *Groves* v. *Clark,* 21 La. Ann. 567, the state. constitution made void all contracts for the sale of persons; held that the third holder of a promissory note given for the price of a slave could not recover thereon although a good faith purchaser for value before maturity.

In *Weed* v. *Bond;* 21 Ga. 195, a statute made contracts between parties and attorneys at law void if the attorney failed to attend the suit. Held, a promissory note given for services, and the attorney failed to attend, was void in the hands of an innocent transferee.

In *New* v. *Walker,* 108 Ind. 365, a note given for a patent right did not have the words required by the statute inserted in the note. The question was whether such a note was protected in the hands of a *bona fide* holder. The statute did not in terms declare such a note void, and it was held that it did not declare it void by necessary implication, and that the note was valid in the hands of an innocent holder. In the course of the opinion the court said: "The decisions agree, that, where the statute in direct terms declares that a note given in violation of its provisions shall be void, it is so no matter into whose hands it may pass. The rule is thus stated by the court in *Vallett* v. *Parker,* 6 Wend. 615: 'Wherever the statute declares notes void, they are

and must be so, in the hands of every holder; but where they are adjudged by the court to be so, for failure, or the illegality of the consideration, they are void only in the hands of the original parties, or those who are chargeable with, or have had notice of the consideration.' It is said by a late writer, in stating the same general rule, that, 'when a statute, expressly or by necessary implication, declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties executing it.' 1 Daniel Neg. Instr. §197. We regard this author's statement as substantially expressing the general rule." See *Sondheim* v. *Gilbert*, 117 Ind. 71, 5 L. R. A. 432.

While the exact question here was not involved in the above case, yet the holding upon the point can not be considered as mere *obiter dicta*. The decisions in other jurisdictions, from many of which we have cited cases, are agreed that the direct terms of a statute make the paper void in the hands of any holder. In view of these decisions and the purposes of the statute, we can not put into the statute an exception, which, from the language used, the legislature may or may not have intended. If it is thought best that the statute should be so construed, the change should be made by the legislature, and not by the courts.

Judgment affirmed.