J-A28030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| VITHALBHAI DHADUK, M.D. AND RANJAN DHADUK, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| BHUPENDRA PATEL, M.D. | : | No. 576 MDA 2025 |

Appeal from the Order Entered March 31, 2025
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2024-05196

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: MARCH 16, 2026**

Vithalbhai Dhaduk, M.D. ("Vithalbhai") and his wife Ranjan Dhaduk (together, "the Dhaduks") appeal from the order sustaining preliminary objections filed by Bhupendra Patel, M.D. The Dhaduks allege the trial court erred in finding 73 P.S. § 2031, titled gaming contracts to be void, barred the recovery of money they lent to Patel. We affirm.

The Dhaduks filed a complaint against Patel seeking to recover $700,000 in gambling losses allegedly incurred at a Florida casino. The Dhaduks allege that Vithalbhai and Patel frequently gambled together, that Vithalbhai often agreed to play blackjack on Patel's behalf, and that, when he did, the parties agreed Patel would be responsible for any losses suffered. Complaint, filed July 25, 2024, at ¶¶ 24, 33, 36-39. The Dhaduks claim Patel did not reimburse them for two loans from time spent gambling in Florida—

$200,000 in chips that Vithalbhai purchased for Patel and $500,000 obtained from Vithalbhai's line of credit (collectively, "Florida Loan"). *Id.* at ¶¶ 44-50, 58. The Dhaduks had previously loaned Patel $300,000, after they "learned of a large amount of debts Patel and his wife had" ("New Jersey Loan"). *Id.* at ¶ 31. They allege that Patel signed a handwritten promissory note about six months after the Florida Loan that listed the three debts and stated Patel would pay $50,000 at that time and then $5,000 every month while he was working. *Id.* at ¶¶ 52-54. The Dhaduks claim Patel made payments until he had paid the New Jersey debt of $300,000 and then ceased payments. *Id.* at ¶ 57.

The Dhaduks asserted claims for breach of contract, promissory estoppel, fraud, and unjust enrichment. Patel filed preliminary objections in the nature of a demurrer. He claimed a Pennsylvania statute, 73 P.S. § 2031, precluded recovery. The trial court sustained the preliminary objections and dismissed the complaint. The Dhaduks appealed.

The Dhaduks raise the following issues:

> (a) Whether the language of 73 P.S. § 2031 is clear and free from all ambiguity, so as to preclude consideration of the factors enumerated in the Pennsylvania Statutory Construction Act, 1 Pa.C.S. § 1921, to determine the legislature's intent behind 73 P.S. § 2031? (see Concise Statement of Errors Complained of on Appeal, Issues 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14).
>
> (b) Whether 73 P.S. § 2031 bars recovery by Dhaduk where Patel's fraudulent misrepresentations and inducements caused Dhaduk to enter into the agreement and render performance? (see Concise Statement of Errors Complained of on Appeal, Issue 23).

(c) Whether any exceptions apply to support Dhaduk's recovery of $700,000 owed to him by Patel, where Dhaduk was unaware of 73 P.S. § 2031 and relied on Patel's misrepresentations as to the legality and enforceability of their agreement? (see Concise Statement of Errors Complained of on Appeal, Issue 24).

The Dhaduks' Br. at 10 (suggested answers omitted).

The Dhaduks first claim the plain language and legislative history of Section 2031 suggest the General Assembly did not intend the statute to apply to loans made for gambling purposes such as the loans at issue. They claim the statute only applies where the bookmaker or winner of a game seeks to recover from a losing bettor. They note Section 2031 is derived from the Statute of Anne, but claim the language differs from the Statute of Anne because Section 2031 omits the provision in the Statute of Anne pertaining to the repayment of money lent or advanced. They claim the omission means the General Assembly did not intend for Section 2031 to apply to loans. The Dhaduks maintain the plain language of the statute also supports their interpretation because the statute focuses on whether the person lost. Here, they maintain, the repayment obligation was not conditioned on whether Patel won or lost. They further argue that the heading—"Gaming Contracts to Be Void"—supports their interpretation because to loan money does not involve a gamble or wager on the part of the lender.

The Dhaduks maintain that Pennsylvania courts have not interpreted Section 2031 as prohibiting enforcement of loans made or used for funds for gambling. They state that most courts that have found gambling agreements unenforceable have done so because the debts arose from illegal activity, not

based on the statute, and claim that where courts relied on Section 2031 the money was owed between participants in the illegal activity.

Section 2031 provides:

> If any person or persons shall lose any money or other valuable thing, at or upon any match of cock-fighting, bullet-playing, or horse-racing, or at or upon any game of address, game of hazard, play or game whatsoever, the person or persons who shall lose their money or other valuable thing shall not be compelled to pay or make good the same; and every contract, note, bill, bond, judgment, mortgage, or other security or conveyance whatsoever, given, granted, drawn or entered into for the security or satisfaction of the same, or any part thereof, shall be utterly void and of none effect.

73 P.S. § 2031.

"Section 2031 was enacted in April 1794 and derives its principle of law from Section 1 of the Statute of Queen Anne, which was enacted in 1710 in Great Britain." *Rounick v. Neducsin*, 231 A.3d 994, 1001 n.7 (Pa.Super. 2020). The Supreme Court of Pennsylvania has concluded that Section 2031 voids any agreements or notes involving gambling debts and renders them unenforceable. *See, e.g., Unger v. Boas*, 13 Pa. 601, 602-603 (1850) (citing the statute and determining that a negotiable note given for a gaming debt while the borrower "was playing at a faro table" was void and unenforceable even in the hands of an innocent holder for value). Recently, this Court applied Section 2031 and concluded that "[a] Note . . . in which a portion of the

outstanding principal was the result of satisfaction of a gambling debt is unenforceable."[1] **Rounick**, 231 A.3d at 1002.

When Section 2031 was first adopted "gambling activities were generally deemed illegal throughout the Commonwealth." **See** Trial Ct. Op., filed Mar. 31, 2025, at 14; **See, e.g.**, **Harper v. Young**, 3 A. 670, 671 (Pa.

---

[1] As the trial court noted, other recent cases addressing Section 2031 have addressed whether a judgment in another state can be enforced in Pennsylvania:

> Besides **Rounick**, the only recent case law discussing 73 P.S. § 2031 has addressed it in the context of the enforcement of sister-state judgments transferred to Pennsylvania based upon gambling debts incurred in other jurisdictions, and those decisions predicated their rulings upon the Full Faith and Credit clause in Article IV, Section 1 of the United States Constitution. **See Greate Bay Hotel & Casino, Inc, v, Saltzman**, 415 Pa. Super. 408, 415, 609 A.2d 817, 820 (1992) (finding that a New Jersey default judgment entered against a Pennsylvania resident in an action to recover unpaid gambling debts was entitled to full faith and credit in Pennsylvania, and stating that "[i]t follows that the trial court in Pennsylvania could not refuse to enforce the judgment obtained against [defendant] in New Jersey merely because, by statute in Pennsylvania, gambling contracts will not be enforced here."); **Desert Palace, Inc, v. Weiss**, 17 Pa. D. & C.4th 51, 52-53 (Alleg. Co. 1992) (refusing to strike a foreign default judgment entered against defendant for "failure to pay a Nevada gambling debt owed by defendant to plaintiff," and concluding that "[a] state is required to give full faith and credit to a money judgment rendered in a civil suit by another state although the judgment violates the public policy of the forum in which enforcement is sought."), *aff'd*, 430 Pa. Super. 653, 630 A.2d 467 (1993), *app. denied*, 537 Pa. 650, 644 A.2d 735 (1994).

Trial Ct. Op., filed Mar. 31, 2025, at 13 n.1.

1886). In July 2004, the General Assembly enacted the Pennsylvania Race Horse Development and Gaming Act (the "Gaming Act"). 4 Pa.C.S. §§ 1101-1904. "The Gaming Act's legislative scheme . . . establishe[d] the Pennsylvania Gaming Control Board, provide[d] for the issuance of slot machine licenses, authorize[d] table games, and regulate[d] other miscellaneous aspects of the gaming industry, such as labor hiring preferences and liquor licenses." *Mount Airy #1, LLC v. Pa. Dep't of Revenue*, 154 A.3d 268, 279 (Pa. 2016); *accord Greenwood Gaming & Entm't, Inc, v. Dep't of Revenue*, 306 A.3d 319, 330 (Pa. 2023) ( "The Gaming Act, which followed the Lottery Law [72 P.S. §§ 3761-101 to 3761-2103] by more than thirty years, permits types of games entirely distinct from those offered by the Lottery; license holders are permitted to offer not only slot machine play, but also a host of table games, which include roulette, baccarat, blackjack, poker and craps, among others.").

Section 1504 of the Gaming Act, entitled "Wagering on credit," states that "slot machine licensees shall not extend credit" and "shall not accept credit cards, charge cards or debit cards" from a patron or player "so as to enable the player to play slot machines." 4 Pa.C.S. § 1504(a). When the General Assembly amended the statute in January 2010, it created a statutory exception to the credit prohibition by enacting Section 13A27, which provides:

> Notwithstanding section 1504 (relating to wagering on credit), a certificate holder may extend interest-free, unsecured credit to patrons for the purpose of playing slot machines or table games in accordance with this section; however, a certificate holder shall not accept credit cards,

charge cards or debit cards from a patron or player for the exchange or purchase of chips, slot machine or table game credits, or for an advance of coins or currency to be utilized by a player to play slot machines or table games. No credit card advance machine may be placed on the gaming floor.

4 Pa.C.S. § 13A27(a)(i). The statute defines "certificate holder" as "[a] slot machine licensee that holds a table game operation certificate awarded by the Pennsylvania Gaming Control Board in accordance with Chapter 13A (relating to table games)." 4 Pa.C.S. § 1103.

In addition, Section 13A27(j) of the Gaming Act states that "[d]raws against unsecured credit extended to patrons pursuant to this section which become uncollectable may not be claimed by a certificate holder as a deduction, credit or any other type of reduction or offset against any tax imposed by this part or the act of March 4, 1971 (P.L. 6 No. 2), known as the Tax Reform Code of 1971." 4 Pa.C.S. § 13A27(j) (footnote omitted).

The trial court concluded that under the plain meaning of Section 2031, the Dhaduks could not recover the money loaned to Patel. Trial Ct. Op. at 22. The court noted that the Dhaduks claim Section 2031 only precluded the collection of gambling debts or enforcement of contracts on gambling obligations if the debt was for illegal gambling debt. *Id.* at 14. The court then pointed out that when the statute was enacted over two centuries ago, all gambling activities were illegal in Pennsylvania. *Id.* at 14-15. It stated that when the General Assembly legalized some gambling, it prevented slot machine licensees from extending credit or accepting credit cards. It pointed out that when the General Assembly created an exception in 2010 allowing a

"certificate holder" to extend interest-free, unsecured credit for the purpose of playing slot machine or table games, it still precluded the use of credit cards, charge cards or debit cards. *Id.* at 15-16. The court noted the exception does not permit private individuals to extend credit to others for gambling purposes. *Id.* at 16. The trial court pointed out that other states created exceptions to statutes similar to Section 2031 for legal gambling, but Pennsylvania did not. *Id.* at 16-18. It found the Gambling Act did not explicitly or implicitly repeal Section 2031. *Id.* at 18. The court concluded that "the clear language of 73 P.S. § 2031 states that a person who loses money in gambling activities cannot be compelled to pay any resulting indebtedness, and that any agreement for the payment or satisfaction of any gambling debt is 'utterly void.'" *Id.* at 22.

We agree with the trial court. Section 2031 precludes recovery for a debt made for gambling purposes. The amendments to the Gaming Act provided limited exceptions to this prohibition. The exceptions, however, are not applicable to the debt at issue. The Dhaduks loaned Patel money and knew when they did so that it was for gambling purposes. Section 2031 precludes recovery of the debt.

In their second issue, the Dhaduks claim Section 2031 did not bar recovery where Patel's fraudulent misrepresentations and inducements caused the Dhaduks to enter the agreement and render performance. They argue Section 2031 does not bar a fraudulent inducement claim, arguing a valid contract is not required for a fraudulent inducement claim. They claim

Patel knew that the $300,000 loan made in New Jersey would be enforceable and therefore repaid that loan, and knew that the $700,000 loan in Florida was not enforceable, as Florida's law is similar to Pennsylvania's law.[2] He maintains Patel promised to repay the $700,000 even though Patel did not intend to repay the loan and knew it would be unenforceable.

The Dhaduks further claim that the Restatement (Second) of Contracts § 198, Restitution in Favor of Party Who is Excusably Ignorant or Is Not Equally Wrong, and Restatement (Second) of Contracts § 180, Effect of Excusable Ignorance, are exceptions. They maintain that these provisions permit recovery based on a contract that is unenforceable because it violates public policy. They argue Section 180 applies here because the Dhaduks did not know Section 2031 prohibited gaming contracts and their ignorance was justifiable because Pennsylvania now extends credit to patrons for purpose of playing slot machines or table games. The Dhaduks also claim they have a claim for restitution for performance Vithalbhai "rendered because he was not equally in the wrong." Dhaduks' Br. at 38.

In their response to Patel's preliminary objection that alleged that Section 2031 barred the Dhaduks' claims, the Dhaduks alleged that there was no "illegal" gambling activity, claiming "there is nothing 'illegal' about two highly educated, sophisticated doctors, lifelong friends, lawfully frequenting casinos, where they each hold substantial lines of credit personally, playing in

---

[2] *See* Trial Ct. Op. at 21-22.

high stakes private rooms, and exchanging 'loans' and chips under their repayment agreement." Plaintiff's Br. in Response to the Preliminary Objections, filed Jan. 21, 2025, at 1-2. They claimed Section 2031 dealt with illegal gambling activity and did not apply to the loan at issue because here they were engaged in legal gambling. They pointed out that "legalized casino gambling has evolved astronomically" since the General Assembly enacted Section 2031 in 1794. *Id.* at 2.

After receiving the Rule 1925(b) statement, the court issued an opinion, pointing out that in their Rule 1925(b) statement, the Dhaduks identified 24 issues. Supplemental Order Pursuant to Pa.R.A.P. 1925(a), filed June 9, 2025, at 1. It said, of the 24 issues, only three issues had been previously raised and they related to one issue – the legalization of gambling constituted an express or implied repeal or modification of Section 2031. *Id.* at 2. It maintained the statement included many factual and legal allegations not previously asserted. *Id.* at 2-4. It further said that even if Dhaduk had been fraudulently induced to enter a contract, the contract was void. *Id.* at 4.

We conclude the Dhaduks waived their final two issues. They did not make the argument regarding fraudulent inducement—that Patel knew the loan allegedly made for New Jersey gambling debts would be enforceable and the Florida loan would not be enforceable[3]—or their claim that Restatement

_____

[3] In the Complaint, in support of the fraudulent misrepresentation and inducement claim, the Dhaduks alleged Patel "ma[d]e numerous intentional
*(Footnote Continued Next Page)*

Sections 180 or 198 applied to the causes of action. Rather, they raised these claims for the first time in their Rule 1925(b) statement. Accordingly, they waived the arguments. ***See Cabot Oil and Gas Corp. v. Speer***, 241 A.3d 1191, 1196 (Pa.Super. 2020) (stating issues cannot be raised for the first time in a Rule 1925(b) statement).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/16/2026

---

and false misrepresentations of material facts to [the Dhaduks] as detailed herein which induced [the Dhaduks] into making the [$300,000 loan and Florida loan]." Complaint at ¶ 73. They alleged that Patel's materially false misrepresentations included "falsely promising [the Dhaduks] that they would be repaid all sums, which material misrepresentations and inducements caused [the Dhaduks] to continue to loan money to [Patel]." ***Id.*** at ¶ 74. They claimed Patel made the "misrepresentations" with "knowledge . . . of their falsity and/or in a reckless manner in conscience ignorance of whether said representations were true or false." ***Id.*** at ¶ 77.